UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**VERSATILE HELICOPTERS,**

      **Plaintiff,**                                  Case No. 2:10-cv-1110
                                                        JUDGE GREGORY L. FROST
      **v.**                                         Magistrate Judge E.A. Preston Deavers

**CITY OF COLUMBUS, et al.,**

      **Defendants.**

## OPINION AND ORDER

This matter is before the Court for consideration of the following filings:

(1) a motion for summary judgment (ECF No. 60) filed by Defendant the City of Columbus ("Columbus")[1]; a memorandum in opposition (ECF No. 63) filed by Plaintiff, Versatile Helicopters, Inc. ("Versatile"); and a reply memorandum (ECF No. 65) filed by

---

[1] The motion indicates that it was filed by the Columbus and the Columbus Police Division ("the Police"). (ECF No. 60.) The First Amended Complaint names the latter entity as the Columbus Police Department. (ECF No. 29.) The difference is ultimately of no importance because as a result of the briefing, the Police is herein dropped as a party to this litigation.

Columbus and the Police argue in their summary judgment briefing that the Police is not capable of being sued because it is merely a division of Columbus. In response, Versatile states in its briefing that because Columbus admits that it and not the Police is properly named in this action, Versatile "would dismiss its claims against Defendant Columbus Police Department." (ECF No. 63, at 1 n.1.) Columbus and the Police do not respond to this statement in the reply memorandum.

Versatile's representation in a footnote is not a separate motion to drop the Police from this litigation pursuant to Federal Rule of Civil Procedure 21. But Versatile, Columbus, and the Police all agree that the Police should not be a party to this litigation. Accordingly, liberally construing Versatile's briefing and recognizing what the parties seek to effectuate, the Court accepts the footnote representation as a Rule 21 motion, **GRANTS** said motion, and drops the Police as a party to this action.

Columbus and the Police; and

(2) a motion for summary judgment (ECF No. 62) filed by Defendant Helicopter Minit-Men, Inc. ("Minit-Men"), a memorandum in opposition (ECF No. 64) filed by Versatile, and a reply memorandum (ECF No. 66) filed by Minit-Men.

For the reasons that follow, this Court drops the Police from this litigation, **GRANTS IN PART** and **DENIES IN PART** the motion for summary judgment (ECF No. 60) filed by Columbus, and **GRANTS** the motion for summary judgment (ECF No. 62) filed by Minit-Men.

## I.  Background

Columbus previously entered into a contract with Minit-Men that called for Minit-Men to inspect, service, and maintain helicopters belonging to the Police.  One helicopter in the police department fleet was a McDonnell Douglas Model 369E, Series 5000-E Helicopter, with the aircraft serial number 0540E and bearing United States identification number N553CR.  In April 2008, Columbus offered this helicopter for sale.

Versatile learned through a broker that the helicopter was for sale and that Minit-Men was responsible for performing a 100-hour annual inspection on the helicopter before its delivery to a buyer.  Minit-Men purportedly performed the inspection, but soon after Versatile subsequently took delivery of the helicopter, Versatile allegedly discovered that the helicopter had structural cracks, time-expired components, loose driving coupling components, and other significant deficiencies.

Versatile filed the instant action against Columbus, the Police, and Minit-Men.  In its First Amended Complaint, Versatile asserts the following claims for relief against the remaining

parties: breach of contract against Columbus in Count I, breach of express and implied warranties in violation of Ohio's Uniform Commercial Code statutes against Columbus in Count II, and negligent or intentional misrepresentation against Minit-Men and Columbus in Count III.[2] (ECF No. 29 ¶¶ 43-61.) Defendants have filed motions for summary judgment on all of these claims. (ECF Nos. 60, 62.) The parties have completed briefing on the motions, which are ripe for disposition.

## II. Discussion

### A. Standard Involved

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *See Muncie Power Prods., Inc. v. United Tech. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In viewing the evidence, the Court must draw all reasonable inferences in favor of the nonmoving party, which must set forth specific facts showing that there is a genuine issue of material fact for trial. *Id*. (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a

---

[2] Although the amended complaint also contains a Count IV, that count simply sets forth asserted damages and therefore does not constitute a claim for relief. (ECF No. 29 ¶¶ 62-65.)

verdict for the nonmoving party." *Muncie*, 328 F.3d at 873 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Consequently, the central issue is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Hamad*, 328 F.3d at 234-35 (quoting *Anderson*, 477 U.S. at 251-52).

### B. Columbus (ECF No. 60)

This is an odd case. The oddity arises not only from the manner in which the parties have litigated the action generally, but also from the peculiar way they have briefed the issues specifically.

The irregularities the Court recognizes primarily manifest themselves in regard to the first two claims in the amended complaint. As noted, Count I is a breach of contract claim in which Versatile asserts that because the helicopter was not in the condition it was represented to be, Columbus breached the sales contract. Count II is a Uniform Commercial Code claim under Ohio statutes in which Versatile, as the buyer, asserts that Columbus, as the seller, violated numerous express and implied warranties recognized by state law. Columbus seeks summary judgment on both claims.

In regard to Count I, Columbus argues that it is entitled to judgment because it was not a party to the sales contract and therefore cannot be held to have breached that contract. Rather, Columbus argues, the sales contract was between Versatile and Air Flite, Inc. ("Air Flite"), the broker that Columbus utilized to sell the helicopter. Because Versatile has not asserted a claim against Air Flite as the agent of Columbus, the city then explains, Versatile cannot proceed against Columbus as the principal for Air Flite's acts. In making these arguments, Columbus

4

repeatedly relies upon Ohio case law related to agency and contractual claims.

Addressing the Uniform Commercial Code claim in Count II, Columbus then argues that because no contract between Columbus and Versatile existed, Columbus was not a seller within the meaning of the Ohio statutory scheme and there was no sale under Ohio's statutes. Columbus fails to cite any authority for its contentions.

In an attempt to evade summary judgment, Versatile counters in its memorandum in opposition that Columbus has not presented the Court with the full context of the sale that occurred.  The Court will summarize some of the evidence upon which Versatile relies below, but the point is that Versatile argues that because the sales agreement lacks a merger clause and in light of Ohio law, the sale actually reaches beyond the four corners of the sales agreement and establishes that Columbus was the actual seller and that a sale between Columbus and Versatile took place.

Now is where the most prominent oddity in this case arises.  As Columbus correctly points out in its reply memorandum, the Versatile-Air Flite sales agreement contains the following provision:

> **Governing Law:** Laws of the State of Oklahoma shall govern this agreement and this Transaction and the parties further agree that venue for any matter relating to this agreement shall be in Pottawatomie County.

(ECF No. 60-5, at 2.)  Relying on this provision, Columbus proceeds in its reply memorandum to assert that if the Court rejects its premise that no contract existed between Versatile and Columbus, then the above-cited contract provision controls.  According to Columbus, this means that "the transaction is not governed by the laws of Ohio, but rather the laws of Oklahoma."

5

(ECF No. 65, at 3.)  Columbus also contends that "[i]n light of the fact that Plaintiff's whole response to this Defendant's Motion is based upon 'Ohio law and the Ohio Revised Code,' Plaintiff has offered no meaningful, [*sic*] response to the Motion for Summary Judgment and the Court must grant the Motion as a matter of law, since there is, in reality, no response."  (*Id.* at 2.)

Columbus' invocation of the foregoing contract clause necessitates making four points.

First, the Court notes as a threshold matter that, despite the forum selection clause quoted above, there is no question as to whether venue is proper.  Columbus raised the issue of improper venue in its answer to the original complaint.  (ECF No. 10 ¶ 25.)  The parties' subsequent February 11, 2011 Rule 26(f) Report provided that "VENUE IF CONTESTED BY THE CITY OF COLUMBUS WILL BE CONTESTED WITHIN 30 DAYS BY MOTION."  (ECF No. 16, at 1.)  The Magistrate Judge's March 10, 2011 Preliminary Pretrial Order then provided: "There are no contested issues involving personal jurisdiction, subject matter jurisdiction, or venue.  Any motion addressing personal jurisdiction, subject matter jurisdiction, or venue, if any, must be filed on or before **APRIL 8, 2011**."  (ECF No. 21, at 2.)  Columbus never challenged venue by motion.  Instead, when Columbus filed its May 27, 2011 answer to the amended complaint, the city did not raise the venue issue.  (ECF No. 32.)  Columbus has thus elected to forfeit any possible venue challenge.  *See Estate of Popovich v. Sony Music Entm't*, No. 1:11 CV 2052, 2012 WL 892531, at *2 (N.D. Ohio Mar. 14, 2012) (explaining when a party waives a forum selection clause).

Second, Columbus' contention that "the Court must grant the Motion [for summary judgment] as a matter of law, since there is, in reality, no response" is simply wrong.  (ECF No. 65, at 2.)  A failure to respond to a summary judgment motion does not invariably entitle the

6

movant to obtaining success on that motion. That is not how summary judgment works. Rather, as Rule 56 makes clear, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and *the movant is entitled to judgment as a matter of law*." Fed. R. Civ. P. 56(a) (emphasis added). Columbus can obtain summary judgment *only* if the law says it should, not simply because Versatile has filed a memorandum in opposition that the city deems non-responsive to the *potentially* dispositive motion. Moreover, given that the summary judgment motion only addresses Ohio claims and relies upon Ohio authority, the contention that the memorandum in opposition constitutes no response because it is based on Ohio law is not logically sound.

Third, Columbus' reply memorandum invocation of Oklahoma law fails to present a permissible argument for summary judgment. As noted in the preceding paragraph, Columbus sought judgment in its summary judgment motion on Count I and II by basing its argument on authority construing Ohio law. Columbus then raised for the first time the Oklahoma issue as an alternative ground for judgment in its reply memorandum. But Columbus is confined to those grounds raised in its motion and initial memorandum in support in its attempt to obtain summary judgment. This Court has explained time and again that "a reply brief is not the proper place to raise an issue for the first time." *United Tel. Co. of Ohio v. Ameritech Servs.*, Inc., No. 2:10–cv249, 2011 WL 53462, at *3 n. 2 (S.D. Ohio Jan.7, 2011). Consequently, the Court need not and will not consider Columbus' new or newly recast arguments. *See Culy Constr. & Excavating, Inc. v. Laney Directional Drilling Co.*, No. 2:12-cv-4, 2012 WL 2071804, at *4 (S.D. Ohio June 8, 2012) (refraining from considering argument first raised in a reply memorandum); *Cooey v. Strickland*, No. 2:04–cv–1156, 2010 WL 3212079, at *12 (S.D. Ohio

Aug.12, 2010) (foregoing consideration of argument improperly raised for first time in reply memorandum); *Tolstih v. L.G. Elecs., U.S.A., Inc.*, No. 2:07–cv–582, 2009 WL 3241665, 6 (S.D. Ohio Oct.2, 2009) (refusing to consider an argument improperly raised for the first time in a reply memorandum); *Piergallini v. Alfa Leisure, Inc.*, No. 2:06–cv–0555, 2008 WL 687167, at *5 (S.D. Ohio Mar.11, 2008) (declining to address an argument improperly raised for the first time in a reply memorandum); *Ferron v. Search Cactus, L.L.C.*, No. 2:06–cv–327, 2007 WL 1792332, at *4 (S.D. Ohio June 19, 2007) (rejecting an argument improperly raised for the first time in a reply memorandum). Columbus' belated Oklahoma argument cannot serve as a rationale for the city obtaining summary judgment.

Fourth, the filings fail to address effectively any genuine dispute of material facts that could affect what law is involved, which in turn would define the relationships of the parties and the scope of the sales contract. Rarely does this Court encounter a case in which it is unclear to the parties at the summary judgment stage what state's law applies. Any such issue here is problematic because if Ohio agency law controls and a Versatile-Columbus contract exists here, then Columbus may be correct in arguing that Oklahoma law applies to the claims.[3] What this

---

[3] The Court uses the term claims because it appears that Columbus' Oklahoma theory would include at least the first two claims. But the extent to which Columbus alternatively posits that only Oklahoma law can control is unclear. Columbus states in its briefing that "if one adopts Plaintiff's theory that the Aircraft Purchase Agreement did somehow include the City of Columbus, then it is respectfully submitted that Plaintiff's *claim* must still fail." (ECF No. 65, at 1 (emphasis added).) Use of the singular "claim" as opposed to "claims" suggests that Columbus is arguing that Oklahoma law would apply only to the breach of contract claim, despite the sales contract saying Oklahoma law applies to the written sales agreement itself *and* the transaction (*i.e.*, the sale), which would mean that Ohio law would apply to the Uniform Commercial Code claim related to the sale and the negligent misrepresentation claim related to representation made as part of that sale. But in then arguing that because Versatile's memorandum in opposition relied only on Ohio law it fails to constitute a response to the motion for summary judgment, Columbus appears to suggest that Oklahoma law must apply to all of the

would mean is that Versatile has asserted claims under the wrong state's law in this litigation and that Columbus' summary judgment motion relies on Ohio law to attack Ohio claims when Oklahoma claims should have been brought.

Who is a party to the sales contract depends in part on the facts of the Columbus-Air Flite relationship, what state's law governs that relationship, and what documents constitute the sales contract at issue here. But the parties have not presented the facts or the issues to this Court in an effective manner.

Evidence accompanying the summary judgment motion indicates that Columbus contracted with Air Flite for Air Flite to serve as the city's agent in selling the helicopter at issue. That contract, designated a "Marketing Agreement," appointed Air Flite the "exclusive marketing agent" of Columbus, which in turn was described as the owner of the helicopter. (ECF No. 60-2.) The agreement stated that Air Flite would "exclusively manage" the helicopter sale and directed Air Flite to represent the helicopter's condition as "airworthy" with "systems functioning normally" and "current on maintenance." (*Id.*) The agreement also provided that "[a]s Owner's agent, Air shall have no authority to accept or bind Owner to any sale. **Acceptance of any offer shall be in Owner's sole discretion.**" (*Id.*) An August 1, 2008 Aircraft Bill of Sale submitted as additional summary judgment evidence indicates that, on the date indicated, Columbus sold the helicopter to Air Flite for the sum of $1.00. (ECF No. 60-3, at 1.) A second Aircraft Bill of Sale submitted indicates that on April 28, 2009, Air Flite sold the helicopter to Versatile for the sum of $1.00. (ECF No. 60-3, at 3.) This second bill of sale is apparently an outgrowth of the April 2009 Aircraft Purchase Agreement signed by Versatile and

---

claims. (*Id.* at 2.) There should be no such ambiguity in what Columbus is arguing.

Air Flite, which indicated a purchase price of $510,000.  (ECF No. 60-5.)  In an affidavit from Columbus' Director for the Department of Public Safety, the affiant identifies these documents and explains that they reflect that Air Flite was the seller of the helicopter and that Versatile never paid Columbus any money.  He states that Air Flite received the $510,000 from Versatile, deducted its commission, and then transferred the remaining money to Columbus.  (ECF No. 60-1.)

      Evidence submitted that relates to Versatile's memorandum in opposition adds a few new wrinkles to Columbus' account of Air Flite solely owning and selling the helicopter.[4]  In his deposition, Air Flite's president stated that Air Flite did not own the helicopter.  (ECF No. 61-3, at 6 (White Depo. at 21).)  He explained that the two bill of sales mentioned above were only filed on the day of the actual sale, back to back, so that Columbus retained ownership of the helicopter right until the sale to Versatile was effectuated.  (ECF No. 61-3, at 6-7 (White Depo. at 21-23).)  He also explained that Air Flite marketed the helicopter's condition based on representations from Minit-Men *and* Columbus.   (ECF No. 61-3, at 6-7 (White Depo. at 53-54).)  Versatile's president testified in his deposition that he understood that Columbus owned the helicopter, not Air Flite, and that Air Flite was simply a broker.  (ECF No. 61-1, at 25 (Baker Depo. at 99-100, 132).)

      Numerous documents are potentially relevant here beyond merely the sales agreement, as well as the parties' understanding of their roles.  None of this leaves the Court with undisputed facts pointing to judgment.  What this Court is left with is (1) a marketing agreement that

---

[4]  Versatile directs this Court to deposition exhibits, but Versatile failed to file these exhibits with the Court.  (ECF No. 63, at 4.)

appoints Air Flite Columbus' agent, but that had expired by the time the sale took place here; (2) a sales contract that lacks a merger clause and directs the parties to Oklahoma law; (3) a motion for summary judgment that relies on Ohio law to attack Ohio claims; (4) no choice of law analysis briefing; (5) perhaps no meaningful briefing on the relevant agency and contract law implicated by the facts and relationships involved; and (6) facts that suggest that due to the agency involved and the parties' conduct, Columbus was a party to the sales contract and there was consequently a sale subject to a state's Uniform Commercial Code. This in turn leaves Columbus with no summary judgment on its "no contract" and "no sale" theories.

One additional point is necessary in regard to the foregoing claims, although it is not as strongly tied to the Oklahoma contract clause. The Court notes that Columbus mentions in its briefing on Count I and II that the sales contract provided that the helicopter was sold in "as is condition" with no warranties. This is a correct statement regarding the sales contract, which provides: "At the time of delivery Purchaser agrees to accept the Aircraft in an "as is where is" condition. (NO WARRANTY)." (ECF No. 60-5, at 2.) Columbus presents little else on that point, however, despite its obligation under the Local Civil Rules to divulge to this Court not only its reasoning for an asserted entitlement to judgment but also the support for its argument. *See* S. D. Ohio Civ. R. 7.2(a)(1) ("All Motions and applications tendered for filing shall be accompanied by a memorandum in support thereof which shall be a brief statement of the grounds, *with citation of authorities relied upon*." (emphasis added)).

Such an approach is hardly dispositive in light of the obligations of counsel and this Court's role:

> [T]he Court is not obligated to guess at what a party's argument is, guess at what an opposing argument is, and then rule on the merits of arguments that the parties have

>not actually presented. *Cooey v. Kasich*, Nos. 2:04–cv–1156, 2:09–cv–242, 2:09–cv–823, & 2:10–cv–27, 2011 WL 5326141, at *12 n. 5 (S.D. Ohio Nov. 4, 2011) (cautioning counsel that "given that this Court is in the business of resolving disputes and not charged with fashioning arguments from nearly random asides, some might argue that informing the Court of the specific arguments asserted and providing supporting authority for the positions taken would be a more prudent litigation strategy"); *Cooey v. Strickland*, No. 2:04–cv–1156, 2009 WL 4842393, at *99 (S.D. Ohio Dec. 7, 2009) (explaining that "this Court cannot fashion an argument that has not been presented to it and then consider that argument as the basis for [injunctive relief]"); *Lyon v. Yellow Transp., Inc.*, No. 2:08–cv–464, 2009 WL 1604807, at *15 (S.D. Ohio June 8, 2009) ("This Court is in the business of resolving the legal arguments presented to it, not in creating a party's inferred argument for him and then passing judgment on it.").

*Tackett v. M&G Polymers USA, LLC*, No. 2:07-cv-126, 2012 WL 553010, at *23 (S.D. Ohio Feb. 21, 2012). Consequently, although Columbus suggests that the "as is" language is an additional reason for granting summary judgment, the Court declines to enter judgment for Columbus on such a wholly undeveloped, ill-briefed aside.

The Court therefore **DENIES** the motion for summary judgment on Counts I and II.

This leaves for discussion Columbus' attack on Count III of the amended complaint, which presents a combined state law claim for negligent or intentional misrepresentation. The amended complaint does not expressly indicate what state's law Versatile relies upon in this claim, although context of course points to Ohio.[5]

The crux of Count III is that Minit-Men misrepresented that the helicopter was airworthy–that it had been maintained properly and that it satisfied all required inspections and maintenance needs. Versatile asserts that Minit-Men was acting as the agent of Columbus and

---

[5] Oklahoma does not recognize intentional misrepresentation as a distinct claim, but as an element of a fraud claim. *See Dobbs v. Weth Pharm.*, No. CIV-04-1762-F, 2012 WL 975733, at *3 (W.D. Okl. Mar. 16, 2012); *Nichol v. Pray, Walker, Jackman, Williamsn & Marler, A Prof'l Corp.*, 144 P.3d 907, 910 (Okl. Civ. App. Div. 3 2006).

that Minit-Men's negligent or intentional conduct is imputed to Columbus.

Columbus disagrees. The city argues that it is entitled to summary judgment because Minit-Men was an independent contractor, which means that there was no agency relationship between Minit-Men and Columbus and that Columbus cannot be liable for Minit-Men's conduct.

Versatile does not address Count III in its memorandum in opposition. Instead, Versatile offers in its briefing only that it "respectfully urges the Court to deny Defendant City of Columbus' Motion for Summary Judgment and respectfully urges the Court to allow Plaintiff's breach of contract and UCC claims to go to a jury." (ECF No. 63, at 8.) It is unclear whether Versatile simply inadvertently neglected to include a response on Count III or whether Versatile's silence on the third claim is an implicit concession to Columbus' argument.

Under Ohio law, an employer is not liable for the actions of an independent contractor, subject to exceptions that Versatile does not argue are applicable here.[6] *See Giles v. Sun Pipe Line Co.*, 833 F.2d 1012, 1987 WL 39079, at *4 (6th Cir. 1987) (unpublished table decision); *Byrd v. Law Offices of John D. Clunk Co., LPA*, No. 1:09-cv-076, 2010 WL 816932, at *8 (S.D. Ohio Mar. 8, 2010); *CitiMortgage, Inc. v. Robson*, No. 2011-CA-0017, 2011 WL 4067324, at *2 (Ohio 5th Dist. Ct. App. Sept. 13, 2011); *Ford Motor Credit Co. v. Ryan*, 189 Ohio App. 3d 560, 939 N.E.2d 891, 925-26 (Ohio 10th Dist. Ct. App. 2010). Thus, Columbus has presented this Court with a general rule supporting the proposition that, because Minit-Men was an independent contractor, its acts should not be imputed to the city. Versatile has failed to address

---

[6] In the unlikely event that should have been an Oklahoma law claim, this Court notes that Oklahoma law contains the same rule. *See Bouziden v. Alfalfa Elec. Co-op., Inc.*, 16 P.3d 450, 455 (Okl. 2000); *see also Young v. Bob Howard Auto., Inc.*, 52 P.3d 1045, 1050 (Okl. Civ. App. Div. 4 2002).

this argument. There is no apparent dispute of material facts or law to counter the summary judgment motion. Accordingly, Columbus is entitled to summary judgment on Count III. The Court therefore **GRANTS** the motion for summary judgment on Count III.

### C. Minit-Men (ECF No. 62)

Minit-Men, the remaining party named in Count III of the amended complaint, also seeks summary judgment on Versatile's claim for negligent or intentional misrepresentation. The Sixth Circuit has explained that Ohio law defines a claim for negligent misrepresentation as follows:

> [O]ne who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Andersons, Inc. v. Consol, Inc.*, 348 F.3d 496, 505 (6th Cir. 2003) (quoting *Delman v. Cleveland Hts.*, 41 Ohio St.3d 1, 4, 534 N.E.2d 835, 838 (1989)). *See also David A. Flynn, Inc. v. Gen. Motors Acceptance Corp.*, 345 F. App'x 974, 977 (6th Cir. 2009). This definition tracks the Restatement (Second) of Torts § 552(1).

In its briefing, Minit-Men argues that it is entitled to judgment because it was not in privity with Versatile and Versatile was not a member of an identifiable class of persons whose reliance upon Minit-Men's representations was specifically foreseen. Because there is no privity here, the latter issue regarding Versatile's status becomes important. The Court notes that some persuasive authority rejects the argument that there must be a "special relationship" between Versatile and Minit-Men. *See CCB Ohio LLC v. Chemque, Inc.*, 649 F. Supp. 2d 757, 767 (S.D. Ohio 2009); *ATM Exch., Inc. v. Visa Int'l Serv. Ass'n*, No. 1:05-CV-00732, 2008 WL 3843530,

at *15-16 (S.D. Ohio Aug. 14, 2008); *In re Nat'l Century Fin. Enter., Inc., Inv. Litig.*, 580 F. Supp. 2d 639, 647 (S.D. Ohio 2008); *Nat'l Mulch & Seed, Inc. v. Rexius Forest By-Prods., Inc.*, No. 2:02-cv-1288, 2007 WL 894833, at * (S.D. Ohio Mar. 22, 2007). Consequently, the issue is simply whether Minit-Men knew or foresaw that Versatile would reply on its representations.

Minit-Men's lack of specific knowledge of Versatile precludes the negligent misrepresentation claim here. Similar to the task Minit-Men notes in briefing that it conducted, this Court has searched for an analogous case. Both Minit-Men and this Court arrived at *Trans-Gulf Corp. v. Performance Aircraft Services, Inc.*, 82 S.W.3d 691 (Tex. Ct. App. 2002). In that case, a purchaser of an airplane asserted negligent misrepresentation claim against companies that had performed allegedly insufficient maintenance work on the airplane prior to the purchase. The elements of the negligence misrepresentation claim involved in that case mirror Ohio law. *See id.* at 696 ("The elements of a cause of action for negligent misrepresentation are: (1) the representation is made by a defendant in the course of his business or in a transaction in which he has a pecuniary interest; (2) the defendant supplies "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation."). The plaintiff could not satisfy these elements because it could not establish that it fell within the limited class of persons able to assert such a claim.

The *Trans-Gulf Corp.* court explained its rationale as follows:

> [Defendants] contend that [Plaintiff] is not a party entitled to assert a claim for negligent misrepresentation with respect to the misrepresentations which were purportedly made. As noted in *McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787, 794 (Tex. 1999), the class of claimants who can assert a

15

> negligent misrepresentation claim is limited.  Under Restatement (Second) of Torts § 552(2) (1977), liability is limited to loss suffered:
>
>> (a) by the person or one of a limited group of persons for whose benefit and guidance [one] intends to supply the information or knows that the recipient intends to supply it; and (b) through reliance upon it in a transaction that [one] intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.
>
> In interpreting Section 552(2), the court in *McCamish* stated that a negligent misrepresentation cause of action is available only when information is transferred to a known party for a known purpose.
>
> The record establishes that [Defendants'] work on the fuel tanks took place prior to [Plaintiff's] purchase of the aircraft.  There is no evidence that [Plaintiff] was a party known by [Defendants] at the time the repair work was performed or that [Defendants] knew the information would be subsequently supplied to [Plaintiff]. While one might argue that [Defendants] should have assumed that a subsequent owner of the aircraft might rely on their repair records, the Restatement requires actual knowledge of the recipient's identity and a specific intent on the part of the alleged tortfeasor that the claimant would rely on the misrepresentation.  We, therefore, agree with [Defendants'] contentions that [Plaintiff] is not within the limited group of persons who can assert a claim for negligent misrepresentation.

*Id.*[7]  Because Ohio has also adopted Section 552(2), the Court finds that the reasoning of *Trans-*

---

[7] *See also In re Diet Drugs (Phentermine/Fenfluramine/Dexenfluramine) Prods. Liab. Litig.*, No. Civ.A. 03–20546, Civ.A. 03–20811, Civ.A. 03–20791, Civ.A. 03–20756, Civ.A. 03–20774, Civ.A. 03–20778, Civ.A. 03–20632, Civ.A. 03–20660, Civ.A. 03–20372, Civ.A. 04–20009, Civ.A. 03–20653, Civ.A. 03–20831, Civ.A. 03–20649, Civ.A. 03–20784, Civ.A. 020796, Civ.A. 03–20561, Civ.A. 03–20571, Civ.A. 03–20789, Civ.A. 03–20431, Civ.A. 03–20502, Civ.A. 03–20386, Civ.A. 03–20779, Civ.A. 03–20771, Civ.A. 03–20646, Civ.A. 03–20810, Civ.A. 03–20806, Civ.A. 03–20420, Civ.A. 03–20072, Civ.A. 03–20781, Civ.A. 03–20037, Civ.A. 03–20790, Civ.A. 03–20382, Civ.A. 03–20075, Civ.A. 03–20652, Civ.A. 03–20505, Civ.A. 03–20795, Civ.A. 03–20760, Civ.A. 03–20759, Civ.A. 03–20800, Civ.A. 03–20793, Civ.A. 03–20777, Civ.A. 03–20650, Civ.A. 04–20007, Civ.A. 03–20422, Civ.A. 03–20658, Civ.A. 03–20648, Civ.A. 03–20514, Civ.A. 03–20786, Civ.A. 04–20068, Civ.A. 03–20792, Civ.A. 03–20663, Civ.A. 03–20301, Civ.A. 03–20387, Civ.A. 03–20395, Civ.A. 04–20077, Civ.A. 03–20803, Civ.A. 03–20657, Civ.A. 04–20067, Civ.A. 03–20636, Civ.A. 03–20773, Civ.A. 04–20064, Civ.A. 03–20525, Civ.A. 04–20166, Civ.A. 03–20371, Civ.A. 03–20554, Civ.A. 03–20642, Civ.A. 03–20637, Civ.A. 03–20501, Civ.A. 03–20544, Civ.A.

*Gulf Corp.* informs the instant case. *See Russell v. City of Northwood*, No. WD-97-050, 1998 WL 102137, at *4 (Ohio 6th Dist. Ct. App. Feb. 27, 1998) (invoking Section 552(2)).

There is simply no evidence before this Court suggesting that Minit-Men knew of Versatile when it made its representations. Although there is some evidence that Versatile's president spoke with a Minit-Men mechanic the day Versatile took possession from the helicopter from Columbus, there is no testimony that they discussed the airworthiness of the specific helicopter involved. Versatile's president in fact could not say that he and the mechanic talked about anything other than things generally. This does not create a genuine dispute of material fact as to whether Versatile falls within a limited category of entities that Minit-Men could have foreseen as relying on its earlier representations. Versatile does not.[8]

The Court recognizes that although at least one Ohio case might not track the foregoing

---

03–20639, Civ.A. 03–20574, Civ.A. 03–20567, Civ.A. 03–20820, Civ.A. 03–20829, Civ.A. 03–20644, Civ.A. 03–20076, Civ.A. 03–20801, Civ.A. 03–20799, Civ.A. 03–20563, Civ.A. 03–20423, Civ.A. 03–20775, Civ.A. 03–20659, Civ.A. 03–20769, Civ.A. 03–20383, Civ.A. 03–20798, Civ.A. 03–20643, Civ.A. 03–20654, Civ.A. 03–20827, Civ.A. 03–20604, Civ.A. 03–20503, Civ.A. 03–20807, Civ.A. 03–20506, Civ.A. 03–20804, Civ.A. 03–20808, Civ.A. 03–20770, Civ.A. 03–20638, Civ.A. 03–20828, Civ.A. 03–20507, Civ.A. 03–20783, Civ.A. 03–20576, Civ.A. 03–20634, Civ.A. 03–20655, Civ.A. 03–20797, Civ.A. 03–20809, Civ.A. 03–20568, Civ.A. 03–20645, Civ.A. 03–20640, Civ.A. 03–20768, Civ.A. 03–20578, Civ.A. 03–20066, Civ.A. 03–20596, Civ.A. 03–20782, Civ.A. 03–20830, Civ.A. 03–20662, Civ.A. 03–20761, Civ.A. 04–20071, Civ.A. 03–20570, Civ.A. 03–20832, Civ.A. 03–20661, Civ.A. 03–20776, Civ.A. 04–20079, Civ.A. 03–20573, Civ.A. 03–20772, Civ.A. 03–20788, Civ.A. 03–20787, Civ.A. 04–20074, Civ.A. 03–20633, Civ.A. 03–20785, Civ.A. 03–20433, Civ.A. 03–20569, Civ.A. 03–20647, Civ.A. 03–20373, Civ.A. 03–20805, Civ.A. 03–20577, Civ.A. 03–20421, Civ.A. 04–20010, Civ.A. 03–20656, Civ.A. 03–20822, Civ.A. 03–20794, Civ.A. 03–20521, Civ.A. 03–20418, Civ.A. 03–20575, Civ.A. 03–20380, Civ.A. 03–20802, & Civ.A. 03–20780, 2004 WL 1535828, at *10 (E.D. Pa. July 6, 2004).

[8] Today's result is also in line with one Ohio court's most recent treatment of the tort of negligent misrepresentation. In *Middlefield Banking Co. v. Deeb*, No. 2011-G-3007, 2012 WL 2874893 (Ohio 11th Dist. Ct. App. July 16, 2012), a state court of appeals noted that the tort was never intended to have extensive application. *Id.* at *6.

17

rationale fully, the result would be the same. In *United States Bank v. Amir*, No. 97438, 2012 WL 2355620 (Ohio 8th Dist. Ct. App. June 21, 2012), an Ohio court of appeals noted that another court had "found that an appraiser preparing a report for a lending institution should foresee that the purchaser of the property listed on the appraisal form could be within the limited class of persons who would rely on the appraisal." *Id.* at *6 (internal quotation marks omitted). The negligent misrepresentation claim nonetheless failed, however, because the content of the appraisal was not read by the party claiming reliance until after that party had entered into the sales agreement. Assuming *arguendo* that the court of appeals meant that only the property was listed on the appraisal form (as opposed to listing the specific purchaser) so as to call into question the specific-recipient rationale relied upon above, there is still no evidence that Versatile reviewed the log books until after signing the sales agreement.

Given the foregoing, Minit-Men is entitled to summary judgment on the negligent misrepresentation component of Count III.[9] Having reached this conclusion on the grounds addressed herein, the Court need not and does not address Minit-Men's alternative grounds for obtaining judgment.

Minit-Men also seeks summary judgment on the intentional misrepresentation component of Count III. Under Ohio law, this component requires a plaintiff such as Versatile to establish

---

[9] Neither Minit-Men nor Versatile contend that Versatile has asserted its negligent misrepresentation claim under Oklahoma law, but given the issues discussed *supra*, the Court notes that "[t]he Oklahoma Supreme Court has not expressly recognized the tort of negligent misrepresentation" as a distinct tort, at least outside the banking context. *Southcrest, L.L.C. v. Bovis Lend Lease, Inc.*, 2011 WL 3881495, at *5 (N.D. Okl. Sept. 2, 2011). Some Oklahoma courts have relied on Section 552 of the Restatement in characterizing any negligent misrepresentation tort. *See id.* at *5-6. If Oklahoma law were to apply to Count III, judgment for Minit-Men would still be warranted.

> (a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance.

*Andersons, Inc.*, 348 F.3d at 505 (quoting *Carpenter v. Scherer-Mountain Ins. Agency*, 135 Ohio App.3d 316, 327, 733 N.E.2d at1196, 1204 (Ohio Ct. App. 1999)). *See also Burr v. Stark Cnty. Bd. of Comm'rs*, 23 Ohio St.3d 69, 491 N.E.2d 1101, 1102 (1986).

Minit-Men argues that Versatile cannot satisfy its burden because there is no evidence that Minit-Men acted with the intent of misleading another into relying upon the targeted representations regarding airworthiness. In its memorandum in support of the summary judgment motion, Minit-Men in fact asserts that Versatile "will not be able to cite to any evidence or documents in the Memorandum in Opposition to this Motion which satisfy the intent element." (ECF No. 62, at 16.) The memorandum in opposition subsequently made this boast prophetic. Versatile has failed to direct this Court to any evidence that informs the intent element. In the absence of any such evidence, Minit-Men is correct that it is entitled to summary judgment on an Ohio law intentional misrepresentation component of Count III.[10] The Court therefore **GRANTS** the motion for summary judgment on Count III.

### III. Conclusion

For the foregoing reasons, the Court **GRANTS** the as-construed motion to drop the

---

[10] Neither Minit-Men nor Versatile contend that Versatile has asserted its intentional misrepresentation claim under Oklahoma law, but given the issues discussed *supra*, the Court notes that Oklahoma does not recognize intentional misrepresentation as a separate claim. *See Dobbs*, 2012 WL 975733, at *3; *Nichol*, 144 P.3d at 910. If Oklahoma law were to apply to Count III, judgment for Minit-Men would still be warranted.

Police from this litigation (ECF No. 63) made by Versatile, **GRANTS IN PART** and **DENIES IN PART** the motion for summary judgment (ECF No. 60) filed by Columbus, and **GRANTS** the motion for summary judgment (ECF No. 62) filed by Minit-Men.  Only Counts I and II remain pending against Columbus.

    **IT IS SO ORDERED**.

                                                /s/ Gregory L. Frost
                                           GREGORY L. FROST
                                           UNITED STATES DISTRICT JUDGE